IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| _____ ) | |
| ROBERT YERGOVICH, individually and on ) | |
| behalf of all others similarly situated, ) | |
| Plaintiff, ) | |
| v. ) | Case No. _____ |
| ) | |
| SMALL COMMUNITY SPECIALISTS, ) | |
| L.L.C., d/b/a SELECT COMMUNITY ) | |
| SERVICES and/or ASSOCIA, ) | |
| Serve:        CT Corporation System, ) | |
| Registered Agent ) | |
| 4701 Cox Road, Suite 285 ) | |
| Glen Allen, VA  23060 ) | |
| Defendant, ) | |
| ) | |
| and ) | |
| ) | |
| COMMUNITY MANAGEMENT ) | |
| CORPORATION, d/b/a ASSOCIA, ) | |
| Serve:        CT Corporation System, ) | |
| Registered Agent ) | |
| 4701 Cox Road, Suite 285 ) | |
| Glen Allen, VA  23060 ) | |
| Defendant, ) | |
| ) | |
| and ) | |
| ) | |
| ASSOCIATIONS, INC., d/b/a ASSOCIA, ) | |
| Serve:        CT Corporation System, ) | |
| Registered Agent ) | |
| 4701 Cox Road, Suite 285 ) | |
| Glen Allen, VA  23060 ) | |
| Defendant. ) | |
| _____ ) | |

**[PROPOSED] CLASS ACTION COMPLAINT**

The Plaintiff, ROBERT YERGOVICH ("Mr. Yergovich" or "Plaintiff"), individually and

on behalf of all others similarly situated, by counsel, states as follows as and for his Class

Complaint against the Defendants, SMALL COMMUNITY SPECIALISTS, L.L.C.,

COMMUNITY MANAGEMENT CORPORATION, and ASSOCIATIONS, INC. (collectively

"Defendants" or "Associa"), and alleges as follows:

## Introduction

1.      This cause of action is brought pursuant to the Fair Debt Collection Practices Act,

15 U.S.C. 1692 *et seq.* ("FDCPA").  Defendants are debt collectors that regularly and routinely

use collection mechanisms such as dunning notices and notices of intent to record liens to extract

money from consumers that exceed the amounts permitted by law.  Specifically, on behalf of

Homeowner and Condominium Associations ("HOAs" or "community associations"),

Defendants make written demands and extract collection costs, late fees, and attorneys' fees that

exceed the amounts authorized by Virginia law.

## Jurisdiction

2.      This Court has jurisdiction pursuant to 15 U.S.C. § 1692k and 28 U.S.C. § 1331.

Supplemental jurisdiction exists for state claims under 28 U.S.C. § 1367.

## Parties

3.      Plaintiff Robert Yergovich is a natural person who resides in Fairfax County,

Virginia.  Mr. Yergovich is the owner of record of real property located at 3008 Heritage Springs

Court, Alexandria, Virginia (the "Townhouse"), which is situated within a homeowners

association, The Village at Gum Springs Homeowners Association, Inc. ("Village at Gum

Springs").  He is a "consumer" within the meaning of the FDCPA, as defined at 15 U.S.C. §

1692a(3).

4.      Defendant Small Community Specialists, L.L.C., d/b/a Select Community

Services and/or Associa ("Defendant Select Community Services") is a limited liability company

organized under the laws of Virginia, with a principal place of business in Fairfax, Virginia.  It

collects debts and provides community management services for HOAs as a division of Defendant Community Management Corporation and Associations, Inc. Defendant Select Community Services is the management company for Village at Gum Springs. Upon information and belief, it was acting as a division of and/or agent of Defendant Community Management Corporation and Associations, Inc. at all pertinent times, within the scope of its agency. It was and is a "debt collector" within the meaning of 16 U.S.C. § 1692a(6).

5.     Defendant Community Management Corporation, d/b/a Associa ("Defendant Community Management Corporation") is a stock corporation organized under the laws of Virginia, with a principal place of business in Fairfax, Virginia. It collects debts and provides community management services for HOAs. Upon information and belief it was acting as parent company and principal of Defendant Select Community Services at all pertinent times. It was and is a "debt collector" within the meaning of 16 U.S.C. § 1692a(6).

6.     Defendant Associations, Inc., d/b/a Associa ("Defendant Associations, Inc.") is a foreign stock corporation organized under the laws of Texas, with a principal place of business in Dallas, Texas. It collects debts and provides community management services for HOAs. Upon information and belief it was acting as parent company and principal of Defendant Select Community Services and/or Community Management Corporation at all pertinent times. It was and is a "debt collector" within the meaning of 16 U.S.C. § 1692a(6).

7.     Defendants transact business under the name Associa. The Associa Defendants market and describe themselves as a property management company, providing "HOA Collection Services" and a "Full-service contingency-based third-party collection agency" for HOAs. On their public website Defendants purport to "Recover delinquent payments, ASAP." Defendants claim "Our expert team has abundant resources and knowledge to offer unique

approaches that have helped communities with large accounts receivable to significantly mitigate their issues." In their work for HOAs, Defendants regularly collect debts on behalf of third parties from consumers located across the Commonwealth of Virginia. Defendants moreover use one or more instrumentalities of interstate commerce or the mails in a business the principal purpose of which is the collection of debts.

## Statement of Facts

### Background

8.      The Village at Gum Springs Homeowners Association, Inc. is a corporation organized under the laws of Virginia with a principal place of business in Fairfax County. It is the HOA for the residential community which includes Mr. Yergovich's Townhouse. It is a "property owners association" as defined by the Virginia Property Owners Association Act, Va. Code Ann. § 55-508 et seq.

9.      Village at Gum Springs was previously managed by FirstService Residential DC Metro, LLC, d/b/a FirstService Residential and/or Armstrong Management Services ("FirstService Residential").

10.     In January 2015, FirstService Residential assumed the role of property management agent for Village at Gum Springs and began invoicing and receiving online bill pay payments for the Village at Gum Springs residents' HOA assessments. Mr. Yergovich made a timely payment to FirstService Residential for his monthly assessment that month. However, his first payment was $15 short, because Mr. Yergovich inadvertently forgot to change the amount of his automatic payment from $60 to $75 to reflect a year-over-year change in monthly assessments.

4

11.    In February 2015, FirstService Residential sent Mr. Yergovich a bill for $35.49 titled "Past Due, Friendly Reminder", which ostensibly includes a $15 deficiency for the January assessment, a prior $10 balance from before FirstService assumed management of the account, plus a $10.49 "Reminder Fee."  EXHIBIT A.

12.    Mr. Yergovich called FirstService Residential in March 2015 to inquire about the amount of the bill.  FirstService Residential (ostensibly) confirmed that $35.49 was the shortage and late fee owed for his January payment, which would be waived if Mr. Yergovich wrote a letter to the Village at Gum Springs.  FirstService agreed it would accept a payment of $35.49 in full satisfaction of the claim.

13.    Mr. Yergovich promptly paid the $35.49 in full, which was received by FirstService Residential on April 1, 2015.  Mr. Yergovich made the payment believing it was an honest mistake on his part, and he did not feel it was worth the effort to write a letter to the Association to have the late fee waived.

14.    Mr. Yergovich did not hear from FirstService Residential for months about the account.

15.    On August 18, 2015 FirstService Residential mailed Mr. Yergovich a certified letter saying that he now owed $252.45.  EXHIBIT B.  The letter states:

> As of August 12, 2015 our records indicate that the above referenced account has an outstanding balance of **$252.45.** If we do not receive payment in full within **30** days from the date of this correspondence, the above referenced account will be turned over to the Association's collection agent for appropriate collection action. Such action may include, but not be limited to: filing a lien, suit for recovery, foreclosure of the lien, acceleration of the entire year's assessment, interest, penalties, suspension of certain rights and/or privileges, as permitted by current state statute, legal costs and collection fees. Before any suspension of certain rights and/or privileges you have the right to request a hearing, which must be received in writing at the letterhead address within 14 days from this letter.

You may make your payment by phone by calling PayLease at 866-729-5327 or on-line at www.fsresidential.com. You may also remit a check (made payable to the Association) to the following address. Please include your account number on your check.

> Village at Gum Springs HOA
> c/o FirstService Residential
> PO Box 11983
> Newark, NJ 07101-4983

EXHIBIT B.

No explanation or statement of the debt was given.  It states in small print at the bottom that,

> *If you do not dispute the validity of the debt, or any portion thereof, within 30 days after receipt of this letter, the debt will be presumed to be valid.  If you notify us in writing within that 30-day period that the debt, or any portion thereof, is disputed, we will provide you with verification of the debt.  This letter is an effort to collect a debt and any information obtained will be used for that purpose*.  *Id.*

The letter is signed by FirstService Residential's "Accounts Receivable Team."  *Id*.  EXHIBIT B.

16.     Mr. Yergovich promptly sent a certified letter on August 20, 2015 to FirstService Residential disputing the charges.  He had paid the $35.49 in full, which FirstService had agreed to accept in full satisfaction of the claim.  All his other subsequent assessments were paid automatically and electronically in full via online bill pay.  EXHIBIT C.  Mr. Yergovich requested FirstService Residential amend his account to reflect a zero balance.  FirstService Residential did not respond.

17.     On or about October 8, 2015, FirstService Residential sent another certified letter to Mr. Yergovich, stating that he now owed **$363.94** and demanding "payment in full within 30 days from the days of this correspondence," or the account would be turned over for "collection action."  EXHIBIT D.

18.    Mr. Yergovich believed his dispute letter (EXHIBIT C) had been received, and assumed a response would be forthcoming.

19.    However, FirstService Residential never responded.

20.    On or about December 18, 2015, Mr. Yergovich received a letter from the Village at Gum Springs' attorney, E. Margriet Langenberg, Esq. ("Attorney Langenberg").  Attorney Langenberg wrote:

> As a member of the Association, you are required to pay assessments when due. Your account has been referred to me for failure to timely pay the assessments owed through December 9, 2015. Pursuant to the Association's governing documents, you are also responsible for the attorney's fees incurred in the collection of your delinquent account. You currently owe the Association $608.94 comprised of assessments owed through December 9, 2015, late fees, and attorneys' fees in the amount of $100.00. A statement of your account is enclosed for your review.
> . . .
> Please be advised I am a debt collector, and that this letter is an attempt to collect a debt, and any information obtained will be used for that purpose.  EXHIBIT E.

FirstService Residential and Attorney Langenberg's letter did not address or acknowledge Mr. Yergovich's prior correspondence disputing the debt (EXHIBIT C).  The letter contained an ostensible statement of account which showed that Mr. Yergovich had been charged "late charges" and "reminder fees" since February 2015, and charged for a "demand notice" fee in October 2015, plus another $75 for "legal turnover" in December, directly to Mr. Yergovich's account.  The letter demanded $100 in attorneys fees.

21.    Mr. Yergovich replied to Attorney Langenberg's letter on January 4, 2016, via certified mail, *again* disputing the alleged debt, and complaining that FirstService Residential still had not responded at all to his correspondence disputing the debt, or provided any verification of the debt.  He said:

> I paid both the shortage and fees for the erroneous payment (see attached confirmation) on April 1, 2015 in the amount of $35.49. I did so in spite of being

advised by the FirstService representative with whom I spoke that the fees would be waived if I simply wrote to the homeowners association and requested that they be forgiven.

On August 18, 2015 I received the first dunning letter via certified mail (see attachment), seven months after the erroneous payment, and until then had no idea that there was still an issue with my account. I responded promptly with my dispute letter which was sent to the Village at Gum Springs Homeowners Association care of FirstService Residential and signed for on August 24, 2015 (see attached confirmation). I received no response to my dispute letter nor verification of the debt as FirstService Residential continued their collection action with a second dunning letter which I received on October 15, 2015, followed by your letter on December 10, 2015, all the while increasing the fees I supposedly owe. . . EXHIBIT F.

22.    On May 24, 2016, Mr. Yergovich was notified by his financial institution that

they had cancelled his most recent payment to FirstService Residential and removed them as a

payee because FirstService Residential returned his three previous payments – despite the fact

that each of the payments had been delivered on time.

23.    Mr. Yergovich immediately wrote Attorney Langenberg the next day and

demanded an explanation.  EXHIBIT G.  He wrote:

As I mentioned previously, your client has a legal and ethical obligation to act fairly and reasonably when making decisions and taking actions that will affect the homeowners and to do so with the same standard of care and duty as would be expected by any reasonable person, which includes managing the financial and business affairs of the homeowners association with ordinary prudence. I've received no correspondence of any kind from FirstService indicating there was a problem with any of my payments, so I reiterate my concerns and frustration over your client's tolerance of their behavior with regard to payments and timely notification of alleged delinquencies.

I have not yet received a response to my dispute letter dated December 28, 2015, but I ask that you please provide a written response to this letter with some indication of why these payments are being rejected and where they should be sent so that I can ensure my account remains in good standing.  EXHIBIT G.

24.    Another month passed with no response from FirstService or Attorney

Langenberg.  FirstService still provided no validation of the debt.

25.     FirstService Residential continued to invoice late fees to Mr. Yergovich's account. They also invoiced him for Attorney Langenberg's attorney fees which were added directly into his account.

26.     On June 27, 2016, Mr. Yergovich logged onto FirstService Residential's website and made repeated attempts to pay the alleged debt via FirstService Residential's online payment portal and telephone bill pay, even though he believed the debt was not due, because by now he believed by now that it was futile to trust either of them to respond to him. He was told by FirstService Residential's service representative over the phone that FirstService had blocked all payments against his account.

<u>Defendants Take Over Collections</u>

27.     In July, Mr. Yergovich was notified that the Village at Gum Springs was switching to a new management company, Defendant Select Community Management, a division of Community Management Corporation. So Mr. Yergovich sent yet another letter on July 15, 2016 with a cashier's check for $600 for three months assessments. EXHIBIT H. He wrote, "I have attempted to pay this each month by BillPay but the property management company, FirstService Residential has refused to accept the payments."

28.     The Associa Defendants took over as management company for the Village at Gum Springs effective August 1, 2016. They immediately assumed and continued collection of the allegedly delinquent account.

29.     The Associa Defendants did not credit the $600 check to Mr. Yergovich's account, despite the fact that Village at Gum Springs deposited the funds.

30.    Defendants' initial invoice to Mr. Yergovich included a $713.94 "Balance Forward" from FirstService Residential.  Defendants' invoice is titled "Reminder Notice" and instructs him to pay such amounts.  EXHIBIT I.

31.    Each month thereafter, between August and October 2016, more "Late Fees" were added to Mr. Yergovich's account.

32.    On October 17, 2016, Defendants sent Mr. Yergovich a certified letter titled, "Notice of Intent to Accelerate Assessments and File Lien," demanding payment of $883.94.  It states:

> If payment in full is not received by the Managing Agent within the time frame stated in the Associations Collection Policy, the remaining installments of your annual assessment will be accelerated and declared due and payable immediately and a lien shall be filed against your unit, pursuant to the Associations Collection Resolution.  Pursuant to the governing documents of the Association, you may be held responsible for attorney's fees and costs involved in the collection of your delinquent account."  EXHIBIT J.

33.    Defendants did not provide any disclosure that Mr. Yergovich had a right to contest the debt or request validation of the debt.

34.    Defendants did not provide any 15 U.S.C. §1692g(a)(3-5) disclosures at all.

35.    Defendants did not respond to Mr. Yergovich's letters contesting the debt.

36.    Defendants continued imposing "Late Fees" of $35 into Mr. Yergovich's account each month through November 2016.  They also imposed a "Turnover to Legal" fee of $30 in November.  EXHIBIT K.

**Defendants (Finally) Realize the Mistake**

37.    Finally, in December of 2016, Defendants wrote off the $713.94 "Balance Forward" from FirstService Residential, $105 in late fees, $75 for "Misapplied Payment," $30 for the "Turnover for Legal," and $25 for a "Certified Letter Charge."  EXHIBIT L.  No

10

explanation was given except for a series of line-items and comments in the margin of the invoice: "**Bad Debt/Write Off**", "**Not [sic] authority to collect**", "**Payments timely**", and "**Per BOD** [Board of Directors]." *Id.*

38.    Defendants sent Mr. Yergovich a letter on May 9, 2017 stating, "I apologize that the payment that was sent was not received and processed."  EXHIBIT M.

39.    Yet, even the apology letter is itself inaccurate, as it states, "However, your account currently shows an outstanding amount due of $145.00."  EXHIBIT M.  Mr. Yergovich was in fact paid in full.

40.    On June 19, 2017, Defendants sent Mr. Yergovich yet another "Notice of Intent to Accelerate Assessments and File Lien," demanding the $145 plus an additional $25 "Certified Mail/Administrative Charges."  EXHIBIT N.

### Defendant's FDCPA Violations

41.    HOA assessments and charges are "debts" as defined and governed by the FDCPA.  *See Agan v. Katzman & Korr, P.A.*, 2004 U.S. Dist. LEXIS 4138 (S.D. Fla. March 16, 2004); *Newman v. Boehm, Pearlstein & Bright, Ltd.*, 119 F.3d 477 (7th Cir. 1997); *Ladick v. Van Gemert*, 146 146 F.3d 1205 (10th Cir. 1998).

42.    Defendants violated 15 U.S.C. § 1692g(a) by failing to provide Mr. Yergovich a written notice within 5 days after their initial communication containing the disclosures required by 15 U.S.C. § 1692g(a) *et seq*., including without limitation:

   a.    Defendants did not provide any 15 U.S.C. §1692g(a)(3-5) disclosures at all.

43.    Defendants violated the FDCPA, 15 U.S.C. § 1692e(2, 5, 10) and 1692f(1), by making false, deceptive, and/or misleading representations in connection with the collection of debt, including without limitation:

a.    That Mr. Yergovich was indebted to Village at Gum Springs; after FirstService Residential agreed to accept a payment of $35.49 in full satisfaction of the claim, and Mr. Yergovich made the payment.

b.    That Mr. Yergovich owed Village at Gum Springs attorney's fees when there was no right to claim such fees.  There are no provisions in Village at Gum Springs Declaration (EXHIBIT M) that allow the Association or Defendants to assess, demand or recover attorney's fees before filing suit.  The Declaration only provides for the "prevailing party" in litigation to recover fees.  The Virginia Property Owners Association Act ("VPOA") likewise **only** provides for the recovery of fees as a "prevailing party," after litigation as well.  Va. Code Ann. § 55-515.

c.    That Mr. Yergovich owed Village at Gum Springs **seven** $10.49 "Reminder Fees."  Section 6.5 of the Village at Gum Springs' Declaration only authorizes a $25 late fee or in a different amount authorized by the Board of Directors for a payment more than 10 days overdue.   "Reminder Fees" coupled with "Late Fees" are not authorized in the Association's Declaration or in the Virginia Property Owners Association Act.

d.    That Mr. Yergovich owed Village at Gum Springs **two** charges for "legal turnover."  No such fee is authorized in the language of the Declaration or in the VPOA.

e.    That Mr. Yergovich owed Village at Gum Springs a charge for "Demand Fee."  No such fee is authorized in the language of the Declaration or in the VPOA.

       f.     That Mr. Yergovich owed Village at Gum Springs **nine** $35 "Late Fees" arising out of an alleged ongoing balance when no money was lawfully due under the Declaration or the VPOA.

       g.     Defendants did not credit the $600 cashier's check Mr. Yergovich mailed in to Mr. Yergovich's account.

44.     Upon information and belief, the Defendants' misrepresentations with respect to the amount owed, and the above collection actions taken were part of a pattern and practice of attempting to collect amounts in excess of the amount actually due, or not legally authorized, in violation of Virginia law. Each such instance that the Defendants misrepresented the debt violated the FDCPA.

45.     Upon information and belief, the Defendants' "Notice of Intent to Accelerate Installments and File Lien" letters are form letters used by each and all of the Associa Defendants as part of a pattern and practice of collecting costs, late fees, and attorneys' fees that exceed the amounts authorized by Virginia law, as more fully described above. These letters contain letterhead for both the parent company "Associa," "Select Community Services," and direct that the recipient pay the demanded amounts, and to contact "Community Management Corporation" if they have any questions regarding the account.

46.     Defendants' actions cost Mr. Yergovich substantial time and caused him emotional distress.

## **Class Action Allegations**

47.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action for himself and on behalf of a "Communication Class" initially defined as follows:

> All natural persons to whom on or after July 31, 2016 the Defendants Associations, Inc., Community Management Corporation and Select Community

Services mailed a communication on behalf of a Condominium or Homeowner's Association without the notice required by as such term is defined in 15 USC § 1692g(a) <u>provided that</u> such person allegedly had balance due at the time Defendant assumed management of their account.

48.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring this action for themselves and on behalf of a "Payment Demand" Class initially defined as follows:

All natural persons to whom on or after July 31, 2016 the Defendants mailed a letter on behalf of a Condominium or Homeowner's Association, that demanded payment for collection costs  or attorney's fees that had not been awarded by a court and/or included a demand for payment of late fees that exceed $50.00; <u>provided that</u> such person allegedly had balance due at the time Defendants assumed management of their account.

49.     **Numerosity. Fed. R. Civ. P. 23(a)(1).**  Upon information and belief, Plaintiff alleges that the class members are so numerous that joinder of all is impractical.  The names and addresses of the class members are identifiable through the internal business records maintained by the Defendants, as well as through the public records of the land records of Circuit Courts in the Commonwealth of Virginia, and the class members may be notified of the pendency of this action by published and/or mailed notice.

50.     **Predominance of Common Questions of Law and Fact.  Fed. R. Civ. P. 23(a)(2).**  Common questions of law and fact exist as to all members of the putative class, and there are no complex factual issues, and no legal issues, that differ between the putative class members. These questions predominate over the questions affecting only individual class members.  Predominant legal questions include, by example only and without limitation: whether the initial correspondences sent to consumers complied with 15 U.S.C. § 1692g(a); whether Defendants' demand for collection costs, attorneys' fees and late fees were lawful in Virginia; and whether the amounts claimed were misrepresented.

14

51.    **Actual Damages**.  Actual damages in this case are uniformly determined as the amount of money collected by the Defendants in collection costs, attorneys' fees and/or late fees that was greater than that permitted under Virginia law.

52.    **Typicality.  Fed. R. Civ. P. 23(a)(3).**  Plaintiff's claims are typical of the claims of each putative class member.  In addition, Plaintiff is entitled to relief under the same causes of action as the other members of the putative class.

53.    **Adequacy of Representation.  Fed. R. Civ. P. 23(a)(4).**  Plaintiff is an adequate representative of the putative class, because his interests coincide with, and are not antagonistic to, the interests of the members of the Class they seek to represent; he has retained counsel competent and experienced in such litigation; and he has and intends to continue to prosecute the action vigorously.  Plaintiff and his counsel will fairly and adequately protect the interests of the members of the Class.

54.    **Superiority.  Fed. R. Civ. P. 23(b)(3).**  Questions of law and fact common to the Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy.  The damages sought by each member are such that individual prosecution would prove burdensome and expensive, given the complex and extensive litigation necessitated by Defendants' conduct. It would be virtually impossible for members of the Class individually to effectively redress the wrongs done to them.  Even if the members of the Class themselves could afford such individual litigation, it would be an unnecessary burden on the Courts.  Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by the Defendants' conduct.  By contrast, the class action device will result in

substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

55.    **Injunctive Relief Appropriate for the Class.  Fed. R. Civ. P. 23(b)(2).**  Class certification is appropriate because the Defendants acted on grounds generally applicable to the Class, making appropriate equitable injunctive relief with respect to the Plaintiff and the Class members.

## COUNT I - VIOLATION OF 15 U.S.C. § 1692e

56.    Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

57.    Mr. Yergovich is a "consumer" as such term is defined in 15 USC § 1692(a)(1).

58.    Defendants are "debt collectors" as such term is defined in 15 USC § 1692(a)(6).

59.    The monies Defendants sought to recover are "debts" as such term is defined in 15 USC § 1692(a)(5).

60.    The communications listed in Exhibits I-N are "communications" as such term is defined in 15 USC § 1692(a)(2).

61.    Defendants violated 15 U.S.C. § 1692e by making false, deceptive, and/or misleading representations in connection with the collection of debt.

62.    Section 15 U.S.C. § 1692k of the FDCPA provides that Plaintiff and the putative class members may recover statutory damages up to $1000, their actual damages, attorney's fees and costs.

63.    Plaintiff and the putative class members are therefore entitled to actual and statutory damages against Defendants, as well as their reasonable attorney's fees and costs, pursuant to 15 U.S.C. § 1692k.

## COUNT II – VIOLATION OF 15 U.S.C. § 1692e(2)

64.    Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

65.    Defendants violated 15 U.S.C. § 1692e(2) by making false, deceptive, and/or misleading representations of the character, amount, or legal status of any debt; or any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.

66.    Plaintiff and the putative class members are therefore entitled to actual and statutory damages against Defendants, as well as their reasonable attorney's fees and costs, pursuant to 15 U.S.C. § 1692k.

## COUNT III - VIOLATION OF 15 U.S.C. § 1692e(5)

67.    Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

68.    Defendants violated 15 U.S.C. § 1692e(5) by threatening to take any action that cannot legally be taken or that is not intended to be taken.

69.    Plaintiff and the putative class members are therefore entitled to actual and statutory damages against Defendants, as well as their reasonable attorney's fees and costs, pursuant to 15 U.S.C. § 1692k.

## COUNT IV – VIOLATION OF 15 U.S.C. § 1692e(10)

70.    Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

71.    Defendants violated 15 U.S.C. § 1692e(10) by using any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

72.     Plaintiff and the putative class members are therefore entitled to actual and statutory damages against Defendants, as well as their reasonable attorney's fees and costs, pursuant to 15 U.S.C. § 1692k.

### COUNT V - VIOLATION OF 15 U.S.C. §1692f

73.     Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

74.     Defendants violated 15 U.S.C. §1692f by using unfair or unconscionable means to collect or attempt to collect any debt.

75.     Plaintiff and the putative class members are therefore entitled to actual and statutory damages against Defendants, as well as their reasonable attorney's fees and costs, pursuant to 15 U.S.C. § 1692k.

### COUNT VI – VIOLATION OF 15 U.S.C. § 1692f(1)

76.     Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

77.     Defendants violated 15 U.S.C. §1692f(1) by collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

78.     Plaintiff and the putative class members are therefore entitled to actual and statutory damages against Defendants, as well as their reasonable attorney's fees and costs, pursuant to 15 U.S.C. § 1692k.

### COUNT VII - VIOLATION OF 15 U.S.C. §1692g(a)

79.     Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

80.     Defendants violated 15 U.S.C. § 1692g(a) by failing to provide consumers a written notice within 5 days after their initial communication containing the disclosures required by 15 U.S.C. § 1692g(a) *et seq*., including without limitation:

       a.     Defendants did not provide any 15 U.S.C. §1692g(a)(3-5) disclosures at all.

81.     Plaintiff and the putative class members are therefore entitled to actual and statutory damages against Defendants, as well as their reasonable attorney's fees and costs, pursuant to 15 U.S.C. § 1692k.

## COUNT VIII – VIOLATION OF 15 U.S.C. § 1692g(b)
### (By Mr. Yergovich Individually)

82.     Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

83.     Defendants violated 15 U.S.C. § 1692g(b) by failing to cease collection of the debt, or any disputed portion thereof, after Plaintiff gave notice that the debt was disputed, until the debt collector obtained verification of the debt and mailed a copy of such verification to Plaintiff.

84.     Plaintiff is therefore entitled to actual and statutory damages against Defendants, as well as his reasonable attorney's fees and costs, pursuant to 15 U.S.C. § 1692k.

WHEREFORE, Plaintiff ROBERT YERGOVICH, on behalf of himself and the putative class members, move for class certification and respectfully requests:

1.     A judgment against Defendants SMALL COMMUNITY SPECIALISTS, L.L.C., COMMUNITY MANAGEMENT CORPORATION, and ASSOCIATIONS, INC., for actual and statutory damages, in the amount of $10,000,000.00, pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*;

2.    A judgment against for attorney's fees and costs, pursuant to 15 U.S.C. § 1692k;

3.    For such other relief the Court deems appropriate.

**TRIAL BY JURY IS DEMANDED.**

ROBERT YERGOVICH

By:  /s/ Nathan D. Rozsa, Esq.
Counsel

Scott A. Surovell, Esquire, VSB #40278
Nathan D. Rozsa, Esquire, VSB #77268
SUROVELL ISAACS & LEVY PLC
4010 University Drive, Suite 200
Fairfax, VA 22030
Telephone 703.277.9750
Facsimile 703.591.9285
ssurovell@surovellfirm.com
nrozsa@surovellfirm.com
Counsel for Mr. Yergovich

<u>List of Attached Exhibits</u>

EXHIBIT A    FirstService Residential Invoice, Past Due, Friendly Reminder (Feb. 27, 2015)

EXHIBIT B    FirstService Residential, Certified Letter (Aug 13, 2015)

EXHIBIT C    Correspondence from Mr. Yerogovich (Aug 20, 2015)

EXHIBIT D    FirstService Residential Invoice, Certified Letter (October 8, 2015)

EXHIBIT E    Correspondence from E. Margriet Langenberg, Esq. (December 10, 2015)

EXHIBIT F    Correspondence from Mr. Yergovich (December 28, 2015)

EXHIBIT G    Correspondence from Mr. Yergovich (May 25, 2016)

EXHIBIT H    Correspondence from Mr. Yergovich (July 15, 2016)

EXHIBIT I    Select Community Services Invoice, Reminder Notice (Oct 14, 2016)

EXHIBIT J    Select Community Services, Certified Letter, Notice of Intent to Accelerate
             Installments and File Lien (Oct 17, 2016)

EXHIBIT K    Select Community Services Invoice, Reminder Notice (Nov 2016)

EXHIBIT L    Select Community Services Invoice, Reminder Notice (Dec 2016)

EXHIBIT M    Correspondence from P. Gay Bridges to Mr. Yergovich (May 9, 2017)

EXHIBIT N    Select Community Services, Certified Letter, Notice of Intent to Accelerate
Installments and File Lien (June 19, 2017)