IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

ROBERT YERGOVICH, INDIVIDUALLY
AND ON BEHALF OF ALL OTHERS
SIMILARLY SITUATED,

    Plaintiff,

v.                           Case No. 1:17-cv-00865-TSE-JFA

SMALL COMMUNITY SPECIALISTS,
L.L.C. D/B/A SELECT COMMUNITY
SERVICES AND/OR ASSOCIA, *et al*.,

    Defendants.

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AND MOTION TO
STRIKE AND/OR DISMISS CLASS ALLEGATIONS**

       Plaintiff filed this putative class action claiming violations of the Fair Debt Collection

Practices Act ("FDCPA") based upon allegedly incorrect notices from various property

management companies seeking overdue property owners' association fees. *See* Pl.'s Complaint,

¶ 1, *passim*. Plaintiff failed to state sufficient facts in his Complaint to state a cause of action

against Defendants Small Community Specialists, LLC ("Select Community"), Community

Management Corporation, or Associations, Inc.

## I.  FACTUAL ALLEGATIONS

       Plaintiff owns a townhouse subject to the Village at Gum Spring Homeowners

Association ("VGSHOA"). *See id.*, at ¶ 8. The VGSHOA was previously managed by

FirstService Residential DC Metro, LLC ("FirstService"). *See id.*, at ¶ 9. In January of 2015,

Plaintiff failed to pay to FirstService the adequate amount due for his HOA assessment. *See id.*,

at ¶ 10.

In February of 2015, FirstService sent Plaintiff a notice and/or bill regarding the deficiency in his HOA assessment payment plus an overdue rollover amount and a $10.49 "reminder fee." *See id.*, at ¶ 11. Plaintiff paid the amount due. *See id.*, at ¶ 13. Months later, in August of 2015, Plaintiff received another notice from FirstService saying he owed more money from what is allegedly the same past due amounts. *See id.*, at ¶ 15. Plaintiff disputed the amount and refused to make the payment. *See id.*, at ¶ 16-21. In May of 2016, Plaintiff then received notice that FirstService had canceled his most recent assessment payments. *See id.*, at ¶ 22. In June of 2016, Plaintiff was allegedly told by FirstService that all payments against his account had been blocked. *See id.*, at ¶ 26.

In July of 2016, Plaintiff received notice that VGSHOA would be switching to a new property management company. *See* Pl.'s Complaint, ¶ 27. Plaintiff responded to this notice by, yet again, sending a payment to FirstService. *See id.* In August of 2016, Defendant Select Community took over management of the properties on behalf of the VGSHOA. *See id.*, at ¶ 28 Prior to August of 2016, Defendant Select Community had no involvement with the management of the properties or collection of any assessments or fees. *See id.*, at ¶ 1-27.

Throughout the next four months, Plaintiff received three notices from Defendant Select Community regarding an overdue balance and late fees. *See id.* at ¶ 28-36. Plaintiff alleges that these notices did not comply with the FDCPA and contained inaccurate information. *See id.* In December of 2016, Defendant Select Community \ wrote off the charges. *See id.*, at ¶ 37. Plaintiff has alleged making no payments to Select Community for any fees or charges in excess of his monthly assessments. *See id.*, *passim.*

## II. ARGUMENT

Plaintiff claims that Defendants violated the FDCPA.  Plaintiff lacks standing to make such claims both personally and on behalf of a class.  Furthermore, Plaintiff failed to plead sufficient facts to support a claim under the FDCPA.  Plaintiff also failed to plead sufficient facts to support a class certification. Accordingly, Plaintiff's Complaint must be dismissed.

### A.  Plaintiff Lacks Standing to Pursue the Claim

Article III of the Constitution of the United States affords federal courts the authority to decide cases and controversies.  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559, 112 S. Ct. 2130, 2135-36, 119 L. Ed. 2d 351 (1992).  The doctrine of standing dictates what constitutes a case or controversy over which federal courts have jurisdiction.  *See id*. at 560 (citing *Whitmore v. Arkansas*, 495 U.S. 149, 155, 110 S.Ct. 1717, 1722, 109 L.Ed.2d 135 (1990)).  "The United States Constitution's 'case-or-controversy' requirement limits the jurisdiction of the federal court system.  In order to fall within the Constitution's limits and thus the federal court system's jurisdiction, a plaintiff suing in federal court must have standing to pursue his or her claim." *Ryals v. Strategic Screening Solutions, Inc.*, 117 F. Supp. 3d 746, 749 (E.D. Va. 2015).

In instances of class actions, "if none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class."  *O'Shea v. Littleton*, 414 U.S. 488, 494, 94 S. Ct. 669, 675, 38 L. Ed. 2d 674 (1974)(citing *Bailey v. Patterson*, 369 U.S. 31, 32—33, 82 S.Ct. 549, 550—551, 7 L.Ed.2d 512 (1962)).  "If a named plaintiff in a putative class action cannot establish that he has standing to pursue a claim or claims, then the entire action must be dismissed as to the claim or claims as to which standing is lacking."  *Ryals*, 117 F. Supp. 3d at 749 (citing *Doe v. Obama*, 631 F.3d 157, 161 (4th Cir. 2011)).

> The irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'"  Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court."  Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Lujan*, 504 U.S. at 560–61, 112 S. Ct.at 2136 (internal citations omitted).  The party invoking federal jurisdiction bears the burden of establishing these elements.  *Lujan*, 504 U.S. at 560.

"Injury in fact is a constitutional requirement, and it is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing."  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547–48, 194 L. Ed. 2d 635 (2016) (internal citations and quotations omitted).  "To establish injury in fact, a plaintiff must show that he or she suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical."  *See Spokeo*, 136 S. Ct. at 1548 (citing *Lujan*, 504 U.S. at 560).

"For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'"  *Spokeo*, 136 S. Ct. at 1548. (citing Black's Law Dictionary 479 (9th ed. 2009). "A 'concrete' injury must be '*de facto*'; that is, it must actually exist."  *Id*.

> Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. Article III standing requires a concrete injury even in the context of a statutory violation.

*Id.*, 136 S. Ct. at 1549.

Rule 12(b)(1) authorizes this Court to grant a motion to dismiss if the Court lacks subject matter jurisdiction to hear a claim. A plaintiff's standing, or lack thereof, is a jurisdictional issue.[1] *See General Technology Applications, Inc. v. Exro Ltda,* 388 F.3d 114, 118 (4th Cir. 2004). When standing is challenged on the pleadings, the court applies the standard enunciated in *Twombly* and *Iqbal,* as set forth above. *See David v. Alphin,* 704 F.3d 327, 333 (4th Cir. 2013)(the Court need not accept factual allegations "that constitute nothing more than 'legal conclusions' or 'naked assertions.'") (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009))."A motion to dismiss for want of standing is . . . properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter."

In the case at bar, Mr. Yergovich is the only named Plaintiff and filed his action on his own behalf and on behalf of others similarly situated. He must therefore have standing to pursue the claims raised against Defendants. *See Littleton*, 414 U.S. at 494, 94 S. Ct. at 675. Even if Plaintiff asserted facts supporting a statutory procedural violation, he failed to plead facts alleging a particularized and concrete injury caused by these Defendants. In Plaintiff's prayer for relief, Plaintiff requested "[a] judgment against Defendants … for *actual* and *statutory* damages." *See* Pl.'s Complaint. "Actual" damages are the particularized and concrete injury Plaintiff attempted to allege.

---

[1] Some courts address lack of standing when ruling on a Motion to Dismiss pursuant to Rule 12(b)(6). *See Painter's Mill Grille, LLC, et al. v. Brown, et al.*, 716 F.3d 342 (4th Cir. 2013)(affirming dismissal of claims pursuant to Rule 12(b)(6) because plaintiffs lacked standing to bring the claims and failed to state a claim). Regardless of whether this Court considers this issue under Rule 12(b)(1) or Rule 12(b)(6), all claims by the purported class should be dismissed. *See also Ballentine v. United States,* 486 F.3d 806, 810 (3d Cir. 2007) ("A motion to dismiss for want of standing is . . . properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter….. Court[s] must accept as true all material allegations set forth in the complaint, and must construe those facts in favor of the nonmoving party.").

In his Complaint, Plaintiff defines the "actual damages" he is seeking as follows: "Actual damages in this case are uniformly determined as the amount of money collected *by Defendants* in collection costs, attorneys' fees and/or late fees that was greater than permitted under Virginia law. *See id.*, at ¶ 51 (emphasis added). Generally speaking, such damages qualify as concrete damages. As detailed above regarding the factual allegations of the Complaint, however, Defendants Select Community never collected any "collection costs, attorneys' fees and/or late fees" from Plaintiff. *See* Pl.'s Complaint, *passim*. FirstService collected a late fee of $10.49 from Plaintiff, *see id.*, at ¶ 11, but he paid no such costs or fees to any of Defendants he named in this lawsuit. *See id.* FirstService is not a party to this lawsuit.

The actual damages Plaintiff alleges are not particularized because they do not affect Plaintiff in a personal way. *See Spokeo*, 136 S. Ct. at 1548. The actual damages Plaintiff claims are also not concrete because they do not exist. *Id.*, 136 S. Ct. at 1549. Plaintiff has, therefore, failed to plead standing to sue Defendants in his Complaint. *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 472, 102 S. Ct. 752, 758, 70 L. Ed. 2d 700 (1982) ("Art. III requires the party who invokes the court's authority to "show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant…") (citing *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 99, 99 S.Ct. 1601, 1608, 60 L.Ed.2d 66 (1979)).

Stated differently, Plaintiff failed to allege a particularized and concrete injury that comports with the second element of standing – that "the injury has to be 'fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court.'" *Lujan v. Defs. of Wildlife*, 504 U.S. at 560 (citing *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 41–42, 96 S.Ct. 1917, 1926, 48 L.Ed.2d

6

450 (1976). Plaintiff did pay a late fee to FirstService. Assuming that payment constitutes a particularized and concrete injury, it was paid to the wrong entity to satisfy standing requirements. FirstService is not a party to this action not before the court. Plaintiff's payment to FirstService was the result of FirstService's independent action prior to Defendants being engaged by the VGSHOA. Plaintiff effectively filed suit against Defendants for the actions of FirstService. Plaintiff has not, therefore, established an injury fairly traceable to Defendants.

Plaintiff asserts a statutory procedural violation against Defendants, but he failed to plead a particularized and concrete injury caused by that alleged statutory violation. The United States Supreme Court has held that the statutory violation is insufficient to confer standing by itself, and that, even in the context of a statutory violation, a particularized and concrete injury caused by the defendants is required for standing under Article III. *See Spokeo*, 136 S. Ct. at 1549. Plaintiff failed to plead standing for his suit against these Defendants. Since Plaintiff does not have standing, he cannot pursue his claim on his own behalf or on the behalf of others as identified. *See Littleton*, 414 U.S. at 494, 94 S. Ct. at 675; *Ryals*, 117 F. Supp. 3d at 749 (citing *Doe v. Obama*, 631 F.3d 157, 161 (4th Cir. 2011)). Plaintiff's claim, therefore, must be dismissed.

**B. Plaintiffs Failed to Plead Facts to Support a Claim Under the FDCPA**

Rule 12(b)(6) of the Federal Rules of Civil Procedure states that a party against whom a claim is made may assert as a defense by motion that the Complaint fails to state a claim upon which relief can be granted. When reviewing a request to dismiss a Complaint for failure to state a claim, the Court must accept the allegations of the Complaint in the light most favorable to the claimant. However, to survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.' " *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A Rule 12(b)(6) motion to dismiss should be granted if, "after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of [her] claim entitling [her] to relief." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir.1999).

The FDCPA is made up of various statutes that regulate the actions of debt collectors. *See* 15 U.S.C. § 1692a, *et seq.* Section 1692e states: "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. §1692e. The section then goes on to outline the various actions which constitute false, deceptive, or misleading representations. *See id.* Section 1692f states: "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. §1692f. The section outlines the various actions which constitute unfair or unconscionable means of collection. *See id.* Section 1692g Code requires debt collectors provide notice and validation of debts. 15 U.S.C. 1692g. Section 1692a defines a consumer as "any natural person obligated or allegedly obligated to pay any debt" and a "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes…." 15 U.S.C. §§ 1692a(3), 1692a(5).

Plaintiff alleges Defendants violated the various sections cited above by sending improper notices regarding charges arising out of unpaid assessments due on a townhouse. *See* Pl.'s Complaint, *passim.* To properly plead such a claim, Plaintiff would have to allege facts including, but not limited to: that he owned the townhouse, that he resided in the townhouse, that

Defendants sent communications, those communications concerned a debt as defined by the statute, and those communications contained inaccurate information or failed to contain correct and required information, etc.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).  Simply pleading legal conclusions is insufficient.  *See id.*, 556 U.S. at 678, S. Ct. at 1949 ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.").  Plaintiff has, however, failed to allege all such facts necessary to his Complaint.

### 1.    Plaintiff failed to plead that his townhouse is used primarily for personal, family, or household purposes.

The Complaint states that Plaintiff owns the property located at 3008 Heritage Court, Alexandria, Virginia, which is a townhouse, that the VGSHOA is "the HOA for the residential community which includes that townhouse.  *See* Pl.'s Complaint ¶¶ 3, 8.  Plaintiff also plainly states that he "is a consumer within the meaning of the FDCPA, as defined at 15 U.S.C. §1692a(3)."  *See id.*, at ¶ 3.  Plaintiff, however, fails to plead facts to support that he is a consumer.  Plaintiff makes no allegation that he resides at his townhouse.  Plaintiff makes no allegation that his primary usage of the townhouse is for personal or household purposes.  Under Plaintiff's Complaint, he may rent his townhouse out to others or operate a business out of the townhouse, which would remove him from the definition of "consumer."  *See* 15 U.S.C. 1692a. Plaintiff, therefore, failed to plead facts necessary to support his claims.

### 2.    Plaintiff failed to plead that the alleged violations arose out of attempts to collect "debts" within the FDCPA.

The United States District Court for the Western District of Virginia has held that a subdivision's assessment against one of its property owners for maintenance of a private

common road did not constitute a "debt" as defined by the FDCPA. *See Nance v. Petty, Livingston, Dawson, & Devening,* 881 F. Supp. 223, *passim* (W.D. Va. 1994). The Court for the Western District based its decision on the "narrow view" taken by the Fourth Circuit that "excluded from the definition of 'debt' obligations that 'were not incurred to receive consumer goods or services.'" *Id.,* 881 F. Supp. at 225 (citing *Mabe v. G.C. Services Limited Partnership*, 32 F.3d 86, 88 (4th Cir. 1994). Specifically, the Fourth Circuit determined that child support payments did not constitute "debts" under the FDCPA. *See Mabe*, 32 F.3d at 88.

In 2007, this Court was faced with a question of what constitutes a debt under the FDCPA. *See Perk v. Worden,* 475 F. Supp. 2d 565 (E.D. Va. 2007). Specifically, the question before this Court was whether a credit card account that was opened for commercial purposes but ultimately used for consumer purposes constituted a "debt" under the FDCPA. *See id.*, 475 F.Supp.2d at 569-70. Relying on various cases, this Court determined that "the FDCPA is concerned with the substance of the transaction as opposed to the form." *See id.*, 475 F. Supp. 2d at 569. Ultimately, this Court concluded that the credit card account did constitute a "debt" under the FDCPA, reasoning that the debt was incurred not when the account was opened as a corporate account, but rather when the card was actually used for consumer purposes. *See id.*, 475 F. Supp. 2d at 569-70.

Applying this Court's reasoning in *Perk* to the case at bar, this Court must determine when the alleged debt was incurred and for what purpose it was used. *See Perk*, 475 F. Supp. 2d at 569-70. Plaintiff alleges that the assessments were monthly, which means they arose incident to his continued ownership of the property rather than from a single transaction. As discussed above, however, Plaintiff failed to plead his usage of the townhouse or what constituted the assessments. Plaintiff failed to plead essential information necessary to support his claim.

The Second Circuit has ruled that personal property taxes were incidental to ownership of that property and did not arise as a result of any transaction contemplated by the FDCPA. *See Beggs v. Rossi*, 145 F.3d 511, 512 (1998). The Third Circuit has reached the conclusion that per capita municipal taxes are not "debts" under the FDCPA, *see Staub v. Harris*, 626 F.2d 275, 278 (1980)(reasoning that taxes do not constitute the typical commercial-consumer relationship), but a homeowner's consumption of municipal water and sewer services do constitute "debts" under the FDCPA, *see Pollice v. Nat'l Tax Funding, L.P.,* 225 F.3d 379, 400 (3d Cir. 2000)(reasoning that such obligations arose out of usage of such services, thereby constituting a transaction in which services were rendered for household consumption). On the other hand, the Seventh and Tenth Circuits have found ruled that HOA assessments do constitute a "debt" under the FDCPA, reasoning that the transaction creating the obligation to pay the assessment is the purchase of the home subject to the HOA. *See Newman v. Boehm, Pearlstein & Bright, Ltd.,* 119 F.3d 477, 481-82 (7th Cir. 1997)(reasoning that the obligation to pay the HOA assessments "arose in connection with the purchase of the homes themselves, even if the timing and amount of particular assessments was yet to be determined" and rejecting that argument that HOA assessments can be likened to taxes); *Ladick v. Van Gemert*, 146 F.3d 1205, 1206 (10th Cir. 1998).

Some courts have adopted the reasoning of the Seventh and Tenth Circuits, while other courts have declined to do so. *See Abby v. Paige*, 903 F. Supp. 2d 1330, 1335 (S.D. Fla. 2012)(ruling that the balance of a homeowner's assessment account is a "debt" under the FDCPA); *Durso v. Summer Brook Pres. Homeowners Ass'n*, 641 F. Supp. 2d 1256, 1265 (M.D. Fla. 2008)(ruling that HOA fines for failing to follow HOA rules are not "debts" under the FDCPA). *Berndt v. Fairfield Resorts, Inc.*, 337 F. Supp. 2d 1120, 1128 (W.D. Wis.), on

11

reconsideration, 339 F. Supp. 2d 1064 (W.D. Wis. 2004)(adopting the Seventh Circuit's conclusion that the debt arose at the time of purchase of the property and therefore is a "debt" under the FDCPA); *Barry v. Bd. of Managers of Elmwood Park Condo. II*, 18 Misc. 3d 559, 569, 853 N.Y.S.2d 827, 836 (Civ. Ct. Richmond 2007)("The transaction that creates the obligation to pay the common charges is the creation of the condominium, its approval by the attorney general in New York State and the recording of the declaration, covenants and restrictions with the county clerk…. The obligation for payment of the common charges is created when the unit comes into legal existence and not when it is sold to a purchaser. At this point, the triggering transaction has taken place, but there is no "consumer" since there is no "natural person" obligated to make payment (15 USCA 1692a(3)) and there is no "debt" without the existence of a consumer (15 USCA 1692a(5)). Once the condominium is formed the obligation to pay has been established, the only thing that will change is who will be paying the obligation on behalf of the unit.").

As should be evident from the discussion above, whether HOA assessments constitute a "debt" is an open question. Plaintiff asserts only that the assessments were due and that he failed to pay the proper amount of those assessments. Plaintiff failed to plead facts regarding from what, when, or where those assessments arose. Absent such specific pleading, Plaintiff failed to plead the facts that various courts have considered dispositive on whether the assessment constitutes a "debt" under the FDCPA. This Court's analysis in *Perk*, which focused on each specific obligation of each usage of a credit card, rather than the creation of the broader contract relationship between the creditor and the cardholder, further bolsters the need for such detailed information.

**C.  Plaintiff Failed to Plead Facts that Support a Class Certification**

The Supreme Court has observed that "[t]he class action is the exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2550 (2011) (internal quotations omitted).  Rule 23 of the Federal Rules of Civil Procedure sets out stringent requirements for class certification that courts are bound to enforce.  The limitations on class certification set out in Rule 23 must be applied with "full rigor."  *See Amchem Products, Inc. v Windsor*, 521 U.S. 591, 620 (1997); *Windham v. American Brands, Inc.*, 565 F.2d 59, 64 n.6 (4th Cir. 1977) ("There is no presumption that class action should be allowed.")

Pursuant to Fed. R. Civ. P. 23(c)(1)(A), a court must make a determination on class certification "at an early practicable time."  *King v. Capital One Bank (USA), N.A.*, 2012 WL 5570624, at *13 (W.D. Va. Nov. 15, 2012) (court can decide issue of class certification prior to plaintiff moving to certify the class where it is "practicable and appropriate").  Indeed, Rule 23 mandates an early consideration of class certification, because delay in consideration of the issue of class certification would "introduc[e] needless and avoidable complexity into an already complex case." *Vega v. T–Mobile USA, Inc.*, 564 F.3d 1256, 1279 (11th Cir. 2009); *see also, Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 562 (1974)(class certification decision "will normally be made expeditiously."); *Selwood v. Virginia Mennonite Retirement Community, Inc.*, 2004 WL 1946379 (W.D. Va. Aug. 31, 2004) (Plaintiff not entitled to class discovery where it was evident from the Complaint that she was not typical of the class she sought to represent).

The United States Supreme Court, in *Gen Tel. Co. of the Southwest v Falcon*, long ago recognized that "sometimes [class certification] issues are plain enough from the pleadings…." 457 U.S. 147, 160 (1982).  Indeed, the Court noted that "[s]ometimes the issues are plain enough

from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim." *Id.* Thus, in order to properly plead a class action in federal court, plaintiffs must allege facts sufficient to make a "prima facie showing that the class action requirements of Fed. R. Civ. P. 23 are satisfied or that discovery is likely to produce substantiation of the class allegations." *Davis v. Segan,* 2016 WL 254388, *4 (E.D. Va. Jan. 19, 2016)(quoting, *Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir. 1985)); *Selwood v. Virginia Mennonite Ret. Cmty., Inc.*, 2004 WL 1946379, at *2 (W.D. Va. Aug. 31, 2004)(denying class discovery where plaintiff failed to make a "minimal showing" that her claims were typical of the class she purported to represent).

Although it is admittedly early in these proceedings, in the Fourth Circuit, either party may move for a determination of class certification, and may do so prior to discovery. *Strange v. Norfolk and Western Ry. Co.* 809 F.2d 786, 1987 WL 36160, *5 (4th Cir. Jan. 12, 1987)(affirming denial of class certification prior to plaintiff's motion to certify the class); *Nader v. Blair*, 2007 WL 6062652, *11 (D. Md. Sept. 27, 2007)(noting that a "defendant need not wait for the plaintiff to act," and "may move for an order denying class certification."); *Ross-Randolph v. Allstate Ins. Co.*, 2001 WL 36042162 (D. Md. May 4, 2001)(striking class allegations where plaintiffs fail to allege sufficient facts to satisfy Rule 23(b)(3)). Where it is apparent from the face of the complaint that a class action cannot be maintained, as is true here, it is proper to deny certification (or, as appropriate, strike or dismiss the class allegations) *both before discovery and before the plaintiff moves for certification*.[2] In the instant matter, Plaintiff

---

[2] Numerous courts in other Circuits have held similarly. *See, e.g., See Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1006 (11th Cir. 1997)(It was "readily apparent from a reading of the . . . complaint" that Rule 23(b)(3)'s predominance requirement could not be satisfied); *Boring v. Medusa Portland Cement Co.,* 63 F.R.D. 78, 80 (M.D. Pa. 1974) (The "court may act sua sponte or the defendant may move to have the court rule the action unmaintainable as a class

has failed to plead that he has standing to represent the class or that his claim is typical of the class purports to represent and Plaintiff's pleaded classes are unascertainable and overly broad.

       **1.**       **Plaintiff failed to plead that he has standing to represent the class or that his claims are typical of the class.**

The class representative must have standing to represent the class. *See Littleton*, 414 U.S. at 494, 94 S. Ct. at 675; *Ryals*, 117 F. Supp. 3d at 749 (citing *Doe v. Obama*, 631 F.3d 157, 161 (4th Cir. 2011)). Under Rule 23, the claims of the representative party must also be typical of the class. F. R. Civ. Proc. 23(a)(3). "The typicality requirement mandates that Plaintiffs show (1) that their interests are squarely aligned with the interests of the class members and (2) that their claims arise from the same events and are premised on the same legal theories as the claims of the class members." *Jeffreys v. Commc'ns Workers of Am., AFL-CIO*, 212 F.R.D. 320, 322 (E.D. Va. 2003).

As discussed at length above with regard to standing generally, Plaintiff's allegations fail to establish standing and he has not suffered the actual damages allegedly suffered by the class. All arguments made above apply with equal force to the class standing. The same allegations, that remove Plaintiff from having standing to represent the class are the same that demonstrate Plaintiff's claims are not typical of the class he claims to represent.

---

action."); *DuRocher v. Nat'l Collegiate Ath. Assoc.*, 2015 WL 1505675, at *6 (S.D. Ind. Mar. 31, 2015)(The court may make class certification decision before parties conduct discovery "where the pleadings make clear that the suit cannot satisfy Rule 23."); *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011)("nothing in the rules says that the court must await a motion by the plaintiffs"); *Vinole v. Countrywide Home Loans, Inc.*, 246 F.R.D. 637, 639 (S.D. Cal. 2007)(noting that "a defense driven determination of class certification is appropriate when awaiting further discovery will only cause needless delay and expense"); *Picus v. Wal-Mart Stores, Inc.*, 256 F.R.D. 651, 660 (D. Nev. 2009)(granting motion to deny certification prior to any discovery, construing motion under standards of Fed. R. Civ. P. 12(b)(6) and finding that individualized issues predominated over common issues as a matter of law).

Plaintiff claims that the "actual damages" at issue in this matter that have been suffered by the class are "are uniformly determined as the amount of money collected *by Defendants* in collection costs, attorneys' fees and/or late fees that was greater than permitted under Virginia law. *See id.*, at ¶ 51 (emphasis added). Plaintiff does not allege, however, that Defendants Select Community ever collected any "collection costs, attorneys' fees and/or late fees" from Plaintiff. *See* Pl.'s Complaint, *passim*. FirstService collected a late fee of $10.49 from Plaintiff, *see id.*, at ¶ 11, but he paid no such costs or fees to any of the Defendants he named in this lawsuit. *See id*. Plaintiff's alleged damages were caused, therefore, by FirstService, not the Defendants to this action. Plaintiff's interests, therefore, lie against FirstService rather the Defendants. Accordingly, Plaintiff's interests are not aligned with the class he purports to represent against Defendants. Furthermore, as Plaintiff's damages arise from a separate entity than the class, those claims do not arise from the same events as the purported class.

**2.    Plaintiff's pleaded classes are unascertainable and overly broad.**

In his Complaint, Plaintiff asserts two classes: a "Communication Class" and a "Payment Demand Class." *See* Pl.'s Complaint ¶ 47, 48. Plaintiff defines the former as:

> All natural persons to whom on or after July 31, 2016 the Defendants Associations, Inc., Community Management Corporation and Select Community Services mailed a communication on behalf of a Condominium or Homeowner's Association without the notice required by as such term is defined in 15 USC § 1692g(a) provided that such person allegedly had balance due at the time Defendant assumed management of their account.

*Id.* at ¶ 47. Plaintiff defines the latter as:

> All natural persons to whom on or after July 31, 2016 the Defendants mailed a letter on behalf of a Condominium or Homeowners Association, that demanded payment for collection costs or attorney's fees that had not been awarded by a court and/or included a demand for payment of late fees that exceed $50.00; provided that such person allegedly had balance due at the time Defendants assumed management of their account.

16

*Id.* at ¶ 48.

To discern those in the two proposed classes, this Court must identify every single person that any of the three Defendants, which are based in Fairfax, Virginia and Dallas, Texas, sent a letter alleging that a balance was due, when in fact a balance was not due, and the specific late fee or attorney's fee assessed for each person.   An essential prerequisite to certification under Rule 23 is that the class is adequately defined so that the members of the class are clearly ascertainable.   *EQT Production Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014) ("We have repeatedly recognized that Rule 23 contains an implicit threshold requirement that the members of a proposed class be 'readily identifiable'") (internal citations omitted); *In re A.H. Robins Co.*, 880 F.2d 709, 728 (4th Cir. 1989) ("Though not specified in [Rule 23], establishment of a class action implicitly requires ... that there be an identifiable class....") (abrogated on other grounds by *Amchem*, 521 U.S. at 591).

A proposed class is permissible under Rule 23 so long as it is not too amorphous or incapable of a reasonably precise definition.   See 7A Charles Wright, Arthur Miller & Mary Kay Kane, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 1760, at 120–26 (1986).   In other words, a proposed class definition must be stated in objectively definable terms.   *EQT*, 764 F.3d at 358 ("A class cannot be certified unless a court can readily identify the class members in reference to objective criteria.") (internal citations omitted).   It must be "administratively feasible" to determine class membership. *Id.* Where it is impossible to identify class members without "extensive and individualized fact-finding or mini-trials," a class cannot be certified.   *Id.* (citing *Crosby v. Soc. Sec. Admin.*, 796 F.2d 576, 579–80 (1st Cir. 1986) (class could not be certified where identification of class members involved "individualized fact-finding and litigation")).

In *Solo v. Bausch & Lomb, Inc.*, the court found that plaintiff's putative nationwide class of purchasers of allegedly defective contact lens solution was unascertainable, because it would be "virtually impossible" to identify the class members.  2009 WL 4287706 (D. S.C. Sept. 25, 2009).   Plaintiffs sought to certify a class of purchasers of the solution who lacked "full reimbursement" after the solution was recalled.   In concluding that the class was not ascertainable, the court held that it would have to make "thousands of fact-intensive inquiries" to identify class members, including whether an individual purchased the solution during the class period, how much was purchased, whether the individual discarded the solution and how much was discarded.   *Id*. at *6.   Because the court would have to consider "numerous factual scenarios" in order to determine class membership, class was improper.   The court noted "it is abundantly clear that the administrative burdens of certification greatly outweigh any efficiencies to be gained by treating these claims as a class action."  *Id*. at *7; see also, *Plotnick v. Computer Sciences Corp. Deferred Comp. Plan for Key Executives*, 2016 WL 1704158 (E. D. Va. April 26, 2016)(certification denied where individualized findings needed to determine class membership).

Plaintiffs' amorphous class definitions are fundamentally and irreparably defective because they require a multi-pronged, individualized examination for each of the potentially thousands of putative class members to determine class membership.   When one considers the possibility that the class could involve members outside the Commonwealth of Virginia and the actual damages alleged as common to the class as based on Virginia law, *see* Pl.'s Complaint, ¶ 51, the defect of Plaintiff's class definitions become even more evident.

## III.  CONCLUSION

Plaintiff has not pleaded actual damages or a particularized or concrete injury caused by these Defendants and, therefore, Plaintiff's action must be dismissed as he lacks standing to pursue the claim on his own behalf or on behalf of others.  Furthermore, Plaintiff failed to plead facts which support his status as a "consumer" or the status of the subject obligations as "debts" under the FDCPA.  For these reasons, Plaintiff's Complaint must be dismissed in its entirety. Lastly, and in the alternative, should Plaintiff's Complaint survive generally, the class allegations must be struck because Plaintiff's lacks standing to represent the class, has alleged claims typical of the class, and the class definitions are unascertainable and overly broad.

WHEREFORE, Defendants respectfully request this Court dismiss Plaintiff's Complaint with prejudice or, in the alternative, strike Plaintiff's class allegations.

<div style="margin-left:40%">

**SMALL COMMUNITY SPECIALISTS, L.L.C. D/B/A SELECT COMMUNITY SERVICES AND/OR ASSOCIA; COMMUNITY MANAGEMENT CORPORATION D/B/A ASSOCIA; AND ASSOCIATIONS, INC. D/B/A ASSOCIA**

By Counsel

</div>

s/  Danielle D. Giroux_____
VSB No. 45401
Attorney for Small Community Specialists, L.L.C. d/b/a Select Community Services and/or Associa, Community Management Corporation d/b/a Associa and Associations, Inc. d/b/a Associa
Harman, Claytor, Corrigan & Wellman
1940 Duke Street, Suite 200
Alexandria, Virginia  22314
804-747-5200 - Phone
804-747-6085 - Fax
dgiroux@hccw.com

**C E R T I F I C A T E**

I hereby certify that on the 4th day of October 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Scott A. Surovell, Esq.
Nathan D. Rozsa, Esq.Surovell Isaacs & Levy PLC
4010 University Drive, Suite 200
Fairfax, VA 22030
703-277-9750 - Phone
703-591-9285 - Fax
ssurovell@surovellfirm.com
nrozsa@surovellfirm.com

                                        s/   Danielle D. Giroux_____
                                        VSB No. 45401
                                        Attorney for Small Community Specialists, L.L.C.
                                        d/b/a Select Community Services and/or Associa,
                                        Community Management Corporation d/b/a Associa
                                        and Associations, Inc.
                                        Harman, Claytor, Corrigan & Wellman
                                        1940 Duke Street, Suite 200
                                        Alexandria, Virginia  22314
                                        804-747-5200 - Phone
                                        804-747-6085 - Fax
                                        dgiroux@hccw.com