IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| ROBERT A. YERGOVICH, ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | Case No. 1:17-cv-865 |
| SMALL COMMUNITY SPECIALISTS ) | |
| LLC, *et al.*, ) | |
| Defendants. ) | |
| ) | |

## MEMORANDUM OPINION

At issue on cross-motions for summary judgment in this Fair Debt Collection Practices Act (FDCPA)[1] case are the following questions[2]:

(1) Does the complaint adequately allege the injury in fact required to confer standing on plaintiff?

(2) Are defendants—the community manager of a home owner's association and its parent entities—"debt collectors" under the FDCPA so as to be subject to the Act's strictures?

For the reasons that follow, (i) the complaint adequately alleges the requisite injury in fact and standing, but (ii) defendants do not qualify as "debt collectors" under the FDCPA and hence summary judgment must be granted in favor of defendants.

I.

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

---

[1] 15 U.S.C. § 1692–1692p.

[2] After conducting a hearing on defendants' motion to dismiss, an order issued, noting that "it [was] unclear on the current record (i) whether plaintiff suffered an injury in fact; and (ii) whether defendants were acting as 'debt collectors' when they sent the letters in question to plaintiff and the proposed class." *Yergovich v. Small Community Specialists, LLC., et al.*, No. 1:17-cv-00865-TSE-JFA, Order, ECF No. 28, at 8 (Jan. 23, 2018). As a result of the hearing on the motion to dismiss, the parties were ordered to engage in limited discovery and file summary judgment briefs regarding these potentially dispositive threshold issues. *Id.* Both parties complied with the order and filed cross-motions for summary judgment on these issues.

1

Civ. P. 56. And it is settled that "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). On the other hand, if the record reflects a genuine factual dispute, summary judgment is precluded. A genuine factual dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). But importantly, the party opposing summary judgment may not rest upon mere allegations and denials, and must instead "set forth specific facts showing that there is a genuine issue for trial." *Id.* And further, these specific facts must be shown to exist in the record in legally admissible form. Finally, "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Id.* at 252.

The facts recited here are derived from the parties' lists of undisputed material facts and their respective responses to the lists, all in accordance with Local Rule 56(B).[3]

- Plaintiff, Robert Yergovich, owns and resides at a townhouse in Alexandria, Virginia. The townhouse is located within a residential community called The Village at Gum Springs ("The Village"). The Village consists of 158 townhouses, a parking lot and sidewalks. It has no pool or community buildings. The homeowners in The Village have a homeowners association known as The Village at Gum Springs Homeowners Association, Inc. ("The Village HOA").

- Defendant Small Community Specialists ("SCS") is a Virginia limited liability company that provides community management services for The Village HOA.

- Defendant Community Management Corporation is a Virginia corporation and the parent company of SCS.

---

[3] Local Rule 56(B) directs a movant for summary judgment to include in its submission a separately captioned section listing in numbered-paragraph form all material facts as to which the movant contends no genuine dispute exists. Local Civ. R. 56(B). The nonmovant must then respond to each numbered paragraph, either admitting or contesting the putative undisputed fact and citing admissible record evidence to establish a genuine dispute of material fact. The nonmovant's failure to respond to a fact listed by the movant constitutes an admission that the fact is undisputed. In this case, both parties essentially complied with the requirements.

- Defendant Associations Inc. is a Texas corporation that at all relevant times was acting as the parent company of SCS and Community Management Corporation.[4]

- On May 24, 2016, The Village HOA entered into a management agreement ("Management Agreement") with SCS, designating SCS as the "sole and exclusive" common interest community manager for The Village HOA.

- The Management Agreement requires SCS to collect assessments from homeowners as they become due and authorizes SCS to demand payment for payable sums and delinquency charges. A prior Collections Resolution enacted by The Village HOA also required the community manager to collect due assessments.

- Defendants advertise on their website that they provide HOA assessment collection services.

- The Management Agreement also obligates SCS, *inter alia*, to perform the following duties:

    (i) to contract for supplies and services with third parties, including providers for electrical work, paving, towing, landscaping, and pet waste removal services, local law enforcement personnel to serve as a security guards for the community, and The Village HOA's utility providers;

    (ii) to provide The Village HOA with efficient business and financial oversight and advisory services that are consistent with the best interests of The Village HOA and standard industry portfolio management practice;

    (iii) to supervise the organization of all of The Village HOA's meetings;

    (iv) to acquire and maintain The Village HOA's insurance;

    (v) to establish and maintain a 24/7 emergency system for communication with The Village homeowners;

    (vi) to enforce and monitor homeowners' compliance with The Village HOA's governing documents and architectural restrictions;

    (vii) to inspect and maintain the physical grounds of the community;

    (viii) to maintain The Village HOA's accounts by making investments on behalf of The Village HOA and determining the financial institution into which The Village HOA's funds will be deposited;

    (ix) to make disbursements on behalf of The Village HOA in payment of taxes, insurance, and utilities; and

---

[4] Plaintiff alleges in the First Amended Complaint that at all pertinent times, SCS was acting as a division and/or agent of both Community Management Corporation and Associations Inc. First Am. Class Action Compl. ¶ 5. The parties do not address, nor does this opinion reach or decide, whether this is a sufficient basis to name these parties as defendants given that, in general, an LLC's members are not liable for the actions of the LLC unless, as is not the case here, there is evidence to warrant piercing the LLC's veil. *Sky Cable, LLC v. DIRECTV, Inc.*, 886 F.3d 375, 385 (4th Cir. 2018).

- (x) to prepare and present to The Village HOA a yearly budget and monthly financial statement consisting of profits, losses, and account balances.

- Additionally, SCS provides the following services to The Village HOA:
    - (i) SCS provides an on-call maintenance service to the owner members of The Village HOA.
    - (ii) SCS prepares and files the paperwork and payment required to maintain The Village HOA's corporate status in Virginia. SCS also completes and submits The Village HOA's Community Association Annual Report with the Virginia Common Interest Community Board.
    - (iii) SCS facilitates the hiring of accountants and the completion of The Village HOA's annual tax filings.

- The Management Agreement authorizes a schedule of periodic routine service charges, the majority of which do not relate to delinquency processing or debt-collection activity.

- SCS took over as management company for The Village HOA effective August 1, 2016. SCS immediately assumed control over plaintiff's account, and continued collection of plaintiff's allegedly delinquent dues. The Account History Report produced by defendants showed plaintiff's account was in default by $713.94.

- From August 2016 to December 2016, SCS mailed out between eleven and forty-eight delinquency notices per month to The Village homeowners and imposed charges for delinquency status on four homeowners in November 2016 and nineteen homeowners in December 2016.

- SCS's monthly invoices to Village HOA from August to December 2016 reveal that fees for delinquency processing comprised nineteen percent of the itemized charges billed to The Village HOA and ten percent of SCS's total charges billed to The Village HOA.

- From August 2016 to October 2016, defendants sent plaintiff written notices that his account was delinquent and demanded payment of the delinquent charges and late fees.

- On October 17, 2016, defendants sent plaintiff a certified letter titled "Notice of Intent to Accelerate Assessments and File Lien." The letter demanded payment of $883.94 and stated, "If payment in full is not received by the Managing Agent within the timeframe stated in the Associations Collection Policy, the remaining installments of your annual assessment will be accelerated and declared due and payable immediately and a lien shall be filed against your unit . . . ."

- In December 2016, defendants wrote off some of the charges on plaintiff's account.

4

- Plaintiff is employed by the United States Marshal Service, for which he has a top-secret clearance. Plaintiff has had previous employment-related problems due to credit issues, which he wanted to avoid repeating.

- Plaintiff has suffered stress, anxiety, irritation, frustration, and loss of sleep because of the potential impact the defendants' written delinquency notices may have on plaintiff's security clearance. Plaintiff has also suffered stress, anxiety, irritation, frustration, and loss of sleep due to defendants' threats to put a lien on his home and to accelerate the payments of his HOA dues. Plaintiff has taken over-the-counter medicine to help with the anxiety.

## II.

It is well-settled that a plaintiff must have standing for a federal court to exercise jurisdiction over plaintiff's claim. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). This standing requirement has three elements: (1) plaintiff must have suffered an injury in fact, (2) the injury must be fairly traceable to defendant's alleged conduct, and (3) it must be likely that plaintiff's injury will be redressed by a favorable decision. *Id.* at 560–61. An injury in fact must be "concrete and particularized" and "actual or imminent." *Id.* at 560. And in the context of a putative class action, "if none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class." *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974). Here, plaintiff is the only named plaintiff and filed Counts I and II of his complaint on behalf of others similarly situated. Plaintiff must therefore have standing to pursue each of the Counts against defendants.

First, plaintiff asserts standing on the basis that defendants' conduct in violation of the FDCPA caused him to suffer emotional distress. This allegation is sufficient to satisfy the standing requirement. In this regard, the Fourth Circuit has recently held that, in the context of a FDCPA case, a plaintiff can establish the existence of an injury in fact by showing that she has suffered and continues to suffer from emotional distress due to the defendant's violations of the FDCPA. *Moore v. Blibaum & Assocs., P.A.*, 693 F. App'x 205, 206 (4th Cir. 2017); *Ben-Davies v. Blibaum*

& *Assocs., P.A.*, 695 F. App'x 674, 676 (4th Cir. 2017). Here, plaintiff testified in his deposition that he works for the United States Marshal Service, has a top-secret clearance, and has had previous employment-related problems attributable to credit issues, which he wanted to avoid repeating. Dep. of Robert Yergovich at 7:16–20. He further testified that because of the potential impact of defendants' actions on his security clearance and defendants' threats to put a lien on his home and to accelerate the payments of his HOA dues, he has suffered stress, anxiety, irritation, frustration, and loss of sleep. *Id.* at 77:9–78:9. Additionally, plaintiff testified that he has taken over-the-counter medicine to help with the anxiety. *Id.* This evidence is sufficient to demonstrate that plaintiff has suffered emotional distress as a result of defendants' allegedly improper debt-collection activity.

In response, defendants have cited no evidence to contest plaintiff's assertion and evidence that he has suffered emotional distress as a result of defendants' alleged violations of the FDCPA. Instead, defendants merely seek to belittle the seriousness of plaintiff's alleged distress and assert, without evidentiary support, that any emotional distress resulted from plaintiff's own failure to monitor his account. In the face of plaintiff's uncontested record evidence, these bare, conclusory assertions by defendants are insufficient to overcome plaintiff's demonstration of standing at the summary judgment stage. *See Anderson*, 477 U.S. at 248 (holding that a party opposing summary judgment must "set forth specific facts showing that there is a genuine issue for trial").

Plaintiff points to a second independent basis for standing, namely that defendants' allegedly wrongful practices, in violation of the FDCPA, are a separate and independent ground for standing. Although the Supreme Court has held that a plaintiff "cannot satisfy the demands of Article III by alleging a bare procedural violation," the Supreme Court went on to note that the judgment of Congress plays an important role in identifying and elevating intangible harms that

may form the basis of a concrete injury-in-fact. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549–50 (2016). The FDCPA reflects precisely this judgment of Congress, and alleged violations of the FDCPA may form the basis of a concrete injury-in-fact. Indeed, numerous district courts have reached this exact conclusion, even after *Spokeo*. *See Pisarz v. GC Servs. Ltd. P'ship*, No. CV 16-4552 (FLW), 2017 WL 1102636, at *5 (D.N.J. Mar. 24, 2017) (citing six decisions from four different district courts for the proposition that "a violation of the FDCPA produces a concrete injury" and "is not a mere procedural violation of the FDCPA").

Here, the parties argue at length over whether plaintiff overpaid what he properly owed or in fact paid an illegal charge. In the end, this argument is immaterial to the standing issue because a violation of the FDCPA is itself a substantive injury regardless of out of pocket loss. *See, e.g., Genova v. IC Sys., Inc.*, No. CV 16-5621, 2017 WL 2289289, at *3 (D.N.J. May 25, 2017); *Dickens v. GC Servs. Ltd. P'ship*, No. 16–803, 2016 WL 3917530, at *2 (M.D. Fla. July 20, 2016). Therefore, plaintiff's allegations that defendants have violated the FDCPA by failing to provide the disclosures required by the FDCPA, by attempting to collect a debt through means prohibited by the FDCPA, and by failing to cease collection of a debt after plaintiff gave notice that the debt was disputed are sufficient to support standing on each of these counts. Likewise, defendants' subsequent write-off of the allegedly improper charges does not, as defendants argue, render the case moot because the write-off does not erase the substantive injury created by defendants' alleged FDCPA violations.

### III.

The FDCPA's requirements apply only to "debt collectors," which the statute defines as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to

collect, directly or indirectly, debts owed or due or asserted to be owed or due another . . . ." 15 U.S.C. § 1692a(6). Consistent with this, the Fourth Circuit has noted that the FDCPA "defines a debt collector as (1) a person whose principal purpose is to collect debts; (2) a person who regularly collects debts owed to another; or (3) a person who collects its own debts, using a name other than its own as if it were a debt collector." *Henson v. Santander Consumer USA, Inc.*, 817 F.3d 131, 136 (4th Cir. 2016).

The parties here do not dispute that SCS engaged in debt-collection activities on behalf of The Village HOA, but they sharply dispute whether SCS qualifies as a "debt collector" under the FDCPA. This is so because it is settled that "not all who collect debts are 'debt collectors' for purposes of the [FDCPA]." *Harris v. Liberty Community Management, Inc.*, 702 F.3d 1298, 1302 (11th Cir. 2012). Importantly, the FDCPA exempts from its coverage several categories of entities that, among other activities, collect debts. Specifically, § 1692a(6)(F)(i) of the FDCPA excludes from the definition of "debt collector" "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . is incidental to a bona fide fiduciary obligation."[5] 15 U.S.C. § 1692a(6)(F)(i). To be covered by this exemption, (i) defendants must owe a fiduciary obligation to the party for whom they are performing debt collecting services and (ii) defendants' debt-collection activity must be incidental to that fiduciary obligation.

---

[5] The legislative history of the FDCPA makes clear that the definition of "debt collector" was crafted to reflect Congress's determination that debt collectors posed a greater risk of abuse to consumers than creditors. In this respect, the Senate Report states, "[u]nlike creditors, who generally are restrained by the desire to protect their good will when collecting past due accounts, independent collectors are likely to have no future contact with the consumer and are often unconcerned with the consumer's opinion of them." S. Rep. No. 95-382 (1977), reprinted in 1977 U.S.C.C.A.N. 1695, 1696. And as one district court has pointed out, property managers, when acting as a fiduciary agent of the creditor, "have as strong an incentive as creditors to maintain their reputation in the community in order to encourage existing and new tenants and landlords to conduct business with them." *Franceschi v. Mautner-Glick Corp.*, 22 F. Supp. 2d 250, 254 (S.D.N.Y. 1998). Thus, that district court concluded that exempting a comprehensive agent, such as the creditor's property manager, from the reach of the FDCPA "is in harmony with the goals of the Act." *Id.* at 254–55.

8

**A.**

There is little doubt that SCS owed The Village HOA a fiduciary obligation. Specifically, the Virginia Code addresses the relationship between an HOA and its community manager, stating, "[a] common interest community manager owes a fiduciary duty to the associations to which it provides management services with respect to the manager's handling the funds or the records of each association." Va. Code § 54.1-2353.

The parties dispute whether the language in this Virginia statute is sufficiently broad to create a fiduciary obligation with respect to defendants' collection of assessments. This dispute misses the mark. Whether the Virginia statute extends to an HOA's collection activity is immaterial as long as a fiduciary obligation exists between the HOA and the community manager because § 1692a(6)(F)(i) of the FDCPA asks only whether the collection activity is incidental to *a bona fide fiduciary obligation*. 15 U.S.C. § 1692a(6)(F)(i). Here, there is no doubt that SCS owed a fiduciary obligation with respect to handling The Village HOA's funds and records, pursuant to Va. Code § 54.1-2353. This is sufficient to satisfy the first prong of the § 1692a(6)(F)(i) analysis, which requires the existence of a fiduciary obligation between the creditor and debt-collecting party.

**B.**

Of course, the existence of a fiduciary obligation does not end the inquiry. The "critical inquiry" under § 1692a(6)(F)(i) is whether defendants' actions are "incidental" to the fiduciary obligation. *Wilson v. Draper & Goldberg, P.L.L.C.*, 443 F.3d 373, 377 (4th Cir. 2006).

The Eleventh Circuit is the only court of appeals that has addressed the question whether a community manager that engaged in debt-collection activity as part of its management agreement with an HOA is exempt from the FDCPA under § 1692a(6)(F)(i). In *Harris v. Liberty Community*

*Management, Inc.*, the Eleventh Circuit held that although the community management company, Liberty, collected unpaid assessments for the HOA, this activity was incidental to its fiduciary obligation to the HOA and Liberty was not a debt collector under the FDCPA. 702 F.3d 1298, 1302 (11th Cir. 2012). According to the Eleventh Circuit, incidental, "in common parlance, means 'occurring as something casual or of secondary importance.'" *Id.* (citing 1 Shorter Oxford English Dictionary 1343 (5th ed. 2002)). The court then found that the management agreement between Liberty and the HOA allocated to Liberty a wide range of duties beyond debt collection and that Liberty "did much more than just collect assessments for the [HOA]." *Id.* Specifically, Liberty also contracted for maintenance of the community's common areas, contracted for utilities (including gas, electricity, and water), purchased insurance, investigated claims, made reports to insurance companies, kept and maintained ledgers and bank accounts, prepared and submitted a budget, deposited money and wrote checks, reconciled monthly bank statements, and assisted the HOA with its yearly tax filings. *Id.* Based on the additional duties and activities that Liberty performed, the Eleventh Circuit held that Liberty's debt-collection activity was not "central to, or the primary purpose of" Liberty's fiduciary obligation to the HOA, and therefore Liberty qualified for the exemption under § 1692a(6)(F)(i). *Id.*

The *Harris* court's analysis is fully consistent with Fourth Circuit cases that have applied § 1692a(6)(F)(i) in other contexts. Thus, in *Wilson v. Draper & Goldberg, P.L.L.C.*, the Fourth Circuit held that a law firm that was retained solely to foreclose on a property pursuant to a deed of trust did not fall under the exemption because the actions were "central" to its fiduciary obligation and debt collection was the "principal purpose" of its work. *Wilson*, 443 F.3d at 377–78. And in *Goodrow v. Friedman & MacFadyen, P.A.*, a district court in this district held that a party who was "mainly charged" with debt-collection responsibilities could not claim refuge under

§ 1692a(6)(F)(i). 788 F. Supp. 2d 464, 470 (E.D. Va. 2011). Finally, in *Patrick v. Teays Valley Trustees, LLC*, a sister district court found that the alleged debt-collection activity was not "incidental" to a fiduciary obligation because defendants were "acting solely or primarily to collect debts." No. 3:12-CV-39, 2012 WL 5993163, at *11 (N.D.W. Va. Nov. 30, 2012).

In sum, it is clear that the "principal purpose," "central," "main charge," and "sole or primary function" tests that have been applied in the Fourth Circuit are in harmony with the Eleventh Circuit's analysis in *Harris*. Therefore, *Harris* is instructive on how to analyze the case at hand—namely, by looking to the slate of defendants' duties and activities under the Management Agreement to determine whether debt collection is "incidental to" or "central to, or the primary purpose of" defendants' fiduciary obligations to The Village HOA. *See Harris*, 702 F.3d at 1302.

Here, the Management Agreement requires SCS to perform a wide range of duties other than debt collection. Def.'s Mot. for Summ. J., Ex. A. For example, the Management Agreement obligates SCS to perform the following duties:

> (i) to contract for supplies and services with third parties, including providers for electrical work, paving, towing, landscaping, and pet waste removal services, utility providers, and local law enforcement personnel to serve as a security guards for the community;
>
> (ii) to supervise the organization of all of The Village HOA's meetings;
>
> (iii) to enforce and monitor homeowners' compliance with The Village HOA's governing documents and architectural restrictions;
>
> (iv) to acquire and maintain The Village HOA's insurance;
>
> (v) to establish and maintain a 24/7 emergency system for communication with The Village homeowners;
>
> (vi) to inspect and maintain the physical grounds of the community;
>
> (vii) to make investments on behalf of The Village HOA and deposit The Village HOA's funds;
>
> (viii) to make disbursements on behalf of The Village HOA in payment of taxes, insurance, and utilities; and

11

> (ix) to prepare and present to The Village HOA a yearly budget and monthly financial statement consisting of profits, losses, and account balances.

*Id.* at §§ 5–11, Exs. K–N; Bridges Aff. ¶¶ 23–24. Additionally, the record reflects that SCS provides an on-call maintenance service to the owner members of The Village HOA; submits the The Village HOA's Community Association Annual Report and the filing and payment required to maintain The Village HOA's corporate status in Virginia; and facilitates the completion of The Village HOA's annual tax filings. Def.'s Mot. for Summ. J. Ex. 2, Bridges Aff. ¶¶ 18–20, 22; Exs. F, G, J.

Moreover, evidence of the fees that SCS charged to The Village HOA indicate that the bulk of the services that SCS performed for The Village HOA do not relate to debt collection. The Management Agreement includes a schedule of periodic routine service charges that SCS is authorized to bill to The Village HOA, the majority of which are unrelated to delinquency processing or debt-collection activity. *See* Def.'s Mot. for Summ. J. Ex. A at 1, Ex. A (Bates 12). And SCS's monthly invoices to The Village HOA from August to December 2016 reveal that fees for collections and delinquency processing comprised only nineteen percent of the itemized charges billed to The Village HOA and only ten percent of SCS's total charges billed to The Village HOA. *See* Def.'s Opp. To Pl.'s Mot. for Partial Summ. J., Exs. B, C.

This undisputed record evidence clearly demonstrates that defendants' debt-collection activity was "incidental to" and not "central to" or "the primary purpose of" their fiduciary obligations to The Village HOA. As in *Harris*, defendants' Management Agreement obligates SCS to perform a wide range of duties, and SCS does "much more than just collect assessments for the [HOA]." *See Harris*, 702 F.3d at 1302. In fact, defendants' invoices are powerful evidence that only a minority of the work SCS performed for The Village HOA related to debt collection. *See* Def.'s Opp. To Pl.'s Mot. for Partial Summ. J., Exs. B, C (revealing that only nineteen percent of

SCS's itemized fees and only ten percent of its total charges to The Village HOA related to its delinquency processing activity). Therefore, the undisputed record evidence of defendants' numerous duties and activities unrelated to debt collection demonstrates that defendants' debt-collection activity was "incidental" to—not "central to, or the primary purpose of"—the fiduciary obligation owed to The Village HOA. Defendants accordingly are not debt collectors under § 1692a(6)(F)(i) of the FDCPA.[6]

Plaintiff attempts to avoid this conclusion by arguing that the term "incidental" should be interpreted to mean "occurring merely by chance or without intention" and that "central" means that an obligation was contemplated or "intended." In support, plaintiff cites to evidence showing that debt collection was one of the responsibilities that The Village HOA intended SCS to perform. *See* Pl.'s Mem. in Supp. of Mot. for Partial Summ. J., Exs. 5, 7, 8.[7] This argument is unpersuasive, as it is in conflict with the better-reasoned cases, including *Harris* and the Fourth Circuit cases cited *supra*. In *Harris*, as here, one of the many duties of the community management company was to request payment of assessments and to recover delinquent payments as the HOA's agent. *Harris*, 702 F.3d at 1300. Moreover, the community manager in that case was hired when the HOA was experiencing severe financial difficulties because many homeowners were not paying the

---

[6] Defendants also argue, as an alternate basis for this result, that SCS was not a debt collector under § 1692a(6)(F)(iii) because plaintiff has alleged that his account was not properly in default when SCS took over as community manager. This argument fails. To be sure, § 1692a(6)(F)(iii) of the FDCPA excludes from the definition of debt collector any person who, on behalf of a creditor, collects a debt that was not in default when the person acquired the authority to collect the debt. 15 U.S.C. § 1692a(6)(F)(iii); *Henson v. Santander Consumer USA, Inc.*, 817 F.3d 131, 136 (4th Cir. 2016). In this case, the undisputed record evidence clearly shows that plaintiff's account was in default by $713.94 when defendants began to manage his account, as shown by defendants' own Account History Report. See Pl.'s Mem. in Supp. of Mot. for Partial Summ. J., Ex. 11. Plaintiff's dispute as to the accuracy of the debt does not change the fact that his account was in default. Debtors frequently dispute the accuracy of their debts, yet they continue to enjoy the protections of the FDCPA. Therefore, defendants do not satisfy the exemption under § 1692a(6)(F)(iii) because plaintiff's account was in default when they began to manage it.

[7] Plaintiff also points to a letter sent to plaintiff by defendants, which stated "this is an attempt to collect a debt." Pl.'s Opp. to Defs.' Mot. for Summ. J., Ex 14. But this letter only demonstrates that defendants engaged in debt-collection activity, which is not in dispute. And as the Eleventh Circuit observed in *Harris*, "not all who collect debts are 'debt collectors' for purposes of the [FDCPA]." *Harris*, 702 F.3d at 1302.

required assessments. *Id.* Despite this evidence that the parties intended the community management company to collect assessments, the Eleventh Circuit found that this duty was incidental to the management company's fiduciary obligation to the HOA, in light of the wide range of its other duties under the management agreement. *Id.* at 1302. And cases in this circuit, cited *supra*, demonstrate that the proper focus of the § 1692a(6)(F)(i) analysis is whether, among all of the duties contemplated by the parties, debt collection is the "principal," "central," "main," and "primary" duty. *See, e.g., Wilson*, 443 F.3d at 374–78 (holding that a law firm was a "debt collector" under the FDCPA because the law firm was retained *solely* to foreclose on the plaintiff's property after the plaintiff failed to pay her mortgage and debt collection was therefore "central" to the law firm's fiduciary obligation). Therefore, plaintiff's argument fails.

## IV.

For these reasons, defendants' motion for summary judgment must be granted, and plaintiff's motion for summary judgment must be denied.

An appropriate order will issue.

Alexandria, Virginia
September 11, 2018

/s/
T. S. Ellis, III
United States District Judge

14